UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WANDA ANDERSON,

      Plaintiff,

v.                                        CASE No. 8:09-CV-831-T-24TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.[1]    Because the decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain any

reversible error, the decision will be affirmed.

I.

      The plaintiff, who was forty-nine years old at the time of the

administrative hearing and who has a high school education (Tr. 88, 140,

_____

[1]This matter comes before me pursuant to the Standing Order of this court dated
January 5, 1998. See also Local Rule 6.01(c)(21).

410), has been employed as a garment presser for a dry cleaner and a textile worker supervisor (Tr. 143, 144, 147, 431).[2]  She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to a traumatic brain injury and back injuries (Tr. 110). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has the following severe impairments: a small herniation and bulging disc of the thoracic area of the spine, cervical spine herniation and bulge disc [sic], myofascial pain syndrome from a mild bulge disc [sic] at the L3-4 level with herniated nucleous pulposus, and bipolar and panic disorder with drug and alcohol abuse (Tr. 15). The law judge concluded that these impairments restricted the plaintiff to medium work with only occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 19). He found further that she was limited to jobs with simple, routine, repetitive instructions that did not require frequent interaction with the general public (id.). Based upon the testimony of a vocational expert, the law judge

---

[2]The vocational expert stated that, under the Dictionary of Occupational Titles, this latter job is most analogous to a bundle person in the garment industry (Tr. 431).

determined that the plaintiff could return to her past work as a garment presser and bundle person in the garment industry (Tr. 23). The plaintiff was therefore found to be not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner (see Tr. 2-5).

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B). Moreover, in this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2003, in order to receive

disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff alleges that she became disabled when a truck hit her in October 2000, resulting in back and head injuries (Tr. 414). The plaintiff was subsequently in an automobile accident in May 2006 which caused back and neck injuries (see Tr. 151). The plaintiff's medical history also reflects alcohol and drug abuse, and diagnoses of affective disorders. As indicated, the law judge found that the plaintiff suffered from severe physical

and mental impairments, but held that they were not disabling (Tr. 15, 23). The plaintiff asserts three challenges to the law judge's decision (Doc. 13). None of them is meritorious.

A. The plaintiff argues first that the defendant failed to make part of the administrative record, and consider, her psychiatric records from Suncoast Center for Community Mental Health, Inc. ("Suncoast records")(id., pp. 8-10). The Suncoast records consist of the plaintiff's mental health progress notes and treatment plans from May 2006 through July 2007 (Docs. 15, 16).

Plaintiff's counsel, who states that he did not learn about these records until shortly before the administrative hearing, represents that he submitted these records to the law judge fourteen days after the hearing (Doc. 13, p. 10). Notably, plaintiff's counsel failed to alert the law judge that these records were forthcoming. Thus, he did not request the law judge to keep the record open after the hearing and affirmatively told the law judge that there were not any additional medical records (id.; Tr. 409-10).

Moreover, in connection with the request for review by the Appeals Council, plaintiff's counsel was aware that the records were not

included in the administrative transcript (Tr. 405). Nevertheless, there is no indication that he submitted new copies to the Appeals Council.

The plaintiff does not dispute that the Suncoast records are not included in the administrative transcript (Doc. 13, pp. 7, 9). However, she presented them to the court as a two-part appendix (Docs. 15, 16).

The Commissioner argues that, because the Suncoast records are not included in the administrative transcript, and there is no evidence that the law judge or the Appeals Council received these records, they are new evidence which should be evaluated for remand under the sixth sentence of 42 U.S.C. 405(g) ("sentence six") (Doc. 17, pp. 5-6). "A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court." Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1267 (11th Cir. 2007). The plaintiff, although not expressly mentioning sentence six, argues that she must satisfy this standard to warrant a remand for consideration of the Suncoast records (Doc. 13, pp. 9-10, citing Caulder v. Bowen, 791 F.2d 872 (11th Cir. 1986)). Thus, both

parties essentially agree that this issue is properly evaluated under sentence six.

Under sentence six principles, the Suncoast records are new evidence. In other words, the evidence is not cumulative.

The plaintiff, however, has failed to show that the Suncoast records contain material information. With regard to sentence six, evidence is "material" when it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)(quoting Caulder v. Bowen, supra, 791 F.2d at 877). Thus, the plaintiff in this case must show there is a reasonable possibility that the Suncoast records would cause the law judge to change his decision and find her disabled. See id.

The plaintiff argues, in a conclusory manner, that the records are material because they "go[] directly to the question raised by the ALJ as to whether she had a mental impairment independent of her substance abuse or associated with substance abuse" (Doc. 13, p. 9). In this regard, the law judge stated that "[i]t is not clear whether her mental impairment was independent from her substance abuse or associated with the substance abuse, and that

question cannot be answered because she assured the undersigned at the hearing that she has been clean since 2006, and there has been no psychiatric care since then" (Tr. 22).

However, whether her mental impairment was independent of her substance abuse is irrelevant because the law judge found that, regardless of the contributing factors, she suffers from bipolar and panic disorders that limit her to jobs involving simple, routine, repetitive instruction and no frequent interaction with the general public (Tr. 15, 19). Thus, this is not a circumstance where the law judge rejected her allegations of disability based on mental impairments because they were caused by substance or alcohol abuse. 42 U.S.C. 423(d)(2)(C); 1382c(a)(3)(J)("An individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled.").

The plaintiff argues further that the matter should be remanded to the law judge to "determine what effect, if any, [the Suncoast records] ha[ve] on the existence of severe impairments or the residual functional capacity assessment" (Doc. 13, p. 10). However, this is not the standard for

a sentence-six remand; as indicated, it is the plaintiff's burden under sentence six to show the materiality of these records. See Caulder v. Bowen, supra, 791 F.2d at 877. The plaintiff, however, has not even identified the additional mental functional limitations purportedly evidenced by the Suncoast records, much less shown that there is a reasonable possibility that the law judge would find that the plaintiff had those additional limitations. See id.

Regardless, there is not a reasonable possibility that the law judge would change his decision based on these records. To the contrary, the Suncoast records reflect that the plaintiff was successfully managing her mental illness, particularly after she ended her severe substance abuse, and that she had achieved several of her mental health goals (Docs. 15, 16). Thus, when she last kept an appointment, she stated that medication "has helped considerably," and the nurse practitioner noted the absence of "mood instability, racing thoughts, mood swings, or depression" (Doc. 15, p. 14). Further, at that time, she was studying to become an administrative assistant. Id.[3]

---

[3]Notably, this information, and other statements in the new evidence, undermine the plaintiff's claim of a physical disability (Doc. 16, p. 8 (dog-sitting and walking dogs); id.,

Significantly, although the plaintiff testified that she had stopped going to Suncoast because her "time was up" (Tr. 418), the Suncoast records show that the plaintiff's treatment was terminated because she failed to appear for appointments or maintain contact with them (Doc. 15, pp. 10-13). Her voluntary termination of mental health treatment undercuts any claim of a serious mental health disorder.

Although the Suncoast records initially reflect symptoms such as racing thoughts, mood swings, trouble sleeping, and periods of depression (Doc. 16, p. 16), the plaintiff's thought processes remained coherent and organized, her affect was appropriate, and there was no disorientation, or impairment of judgment or memory (id. at p. 22). Additionally, she continued to relate well to others, and attend church and AA meetings (id. at pp. 21, 22).

Moreover, her symptoms of racing thoughts, mood swings, and periods of mania improved within weeks of treatment, which included medication (see id. at pp. 11, 12). Thus, overall, the progress notes do not reflect disabling mental health impairments. See, e.g., supra; Doc. 16, p. 14

_____

p. 14 (was working); id., p. 5 ("has good physical health")). While this information is not to be considered in the review of the law judge's decision, it does support the conclusion that there is not a reasonable possibility that the new evidence could change the law judge's decision.

-11-

("[n]o abnormal psychomotor activity was noted," she was "pleasant and cooperative," her "affect was congruent," "concentration and memory were intact," and "judgment appears to be adequate"); id. at p. 12 ("alert and oriented x3," and "[h]er thought proccesses were organized, coherent, goal directed, and contain no evidence of psychosis").

As indicated, the law judge found that the plaintiff has severe mental impairments and restricted her accordingly to work that involved only understanding and carrying out simple, routine, repetitive instructions, and without frequent interaction with the general public. The plaintiff has made no attempt to show that information in the new evidence supports any greater mental limitation. In fact, the plaintiff has not cited to any of the new information at all in her argument. That failure confirms that there is not a reasonable possibility that the Suncoast records would change the law judge's decision.

The plaintiff argues further, in a conclusory manner, that the Suncoast records are "relevant and probative in that [they] would go directly to the credibility of the claimant because of continued psychiatric treatment [the law judge] was unaware of" (Doc. 13, p. 9). However, the law judge's

comment that the plaintiff had not had psychiatric care since 2006 (Tr. 22) did not play any meaningful role in his credibility determination. Rather, that determination was based on several other factors (Tr. 22-23). Moreover, the Suncoast records also show, consistent with the law judge's comment, that the plaintiff voluntarily terminated mental health treatment. Consequently, there is no likelihood that the Suncoast records would change the law judge's credibility determination.

In sum, because the plaintiff has failed to show that the Suncoast records are material evidence, she has not shown that this matter should be remanded pursuant to sentence six for consideration of these records. In light of this conclusion, it is unnecessary to consider whether the plaintiff has shown good cause for not incorporating the new evidence in the administrative record.[4]

---

[4]Accepting the plaintiff's statement that her lawyer submitted the new evidence to the law judge after the hearing (although an error by a lawyer's office is not unheard of), this would seemingly be good cause for not submitting the material to the law judge. However, plaintiff's counsel was aware that the material was not in the record before the Appeals Council, so that seemingly there was not good cause for not submitting the information at that stage of the administrative proceedings. The Commissioner, however, does not assert an argument based on lack of good cause (Doc. 17, pp. 5-8).

B.  The plaintiff's second argument is that the law judge's credibility determination is not supported by substantial evidence because some of the factual findings upon which it is based are purportedly erroneous (Doc. 13, pp. 10-13).  This argument also lacks merit.

The plaintiff testified at the administrative hearing that she "can't lift," that she can stand and sit for only twenty minutes at a time, and that she can walk only one block (Tr. 417, 420).  She also said that she is in pain most of the time (see Tr. 421, 423).  Additionally, the plaintiff testified that she has trouble concentrating and her "memory isn't all that great" (Tr. 417, 420, 430).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective symptoms.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge recognized the applicable standard by citing the pertinent regulation and Social Security rulings (Tr. 21-22). Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Moreover, consistent with this standard, the law judge found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment" (Tr. 22).

The law judge did not totally reject the plaintiff's subjective complaints, but rather concluded that the plaintiff was restricted to a limited range of medium work. Further, he explained, in detail, the reasons he did not find her testimony of disabling impairments fully credible.

In this respect, the law judge stated (Tr. 22-23):

According to the records, the claimant had not sought treatment from October 27, 2000 to September 21, 2005. She has been inconsistent in regard to the way she alleviates her pain. Ms. Anderson takes only over-the-counter Aleve at times, which is a simple analgesic. This is indicative of a mild level of pain at best. The claimant reported good and significant pain relief from the injections administered from June 27, 2006 to January 22, 2007. She testified at the hearing that she bathes to alleviate her back pain, but later when questioned by her representative about her mental condition she said she does not shower at times. These inconsistencies taint her credibility because either her pain is not so severe as alleged, as she does not require a bath daily or more frequently, or she was trying to present the alleged pain and depression worse than they really are, particularly when she was last discharged from a mental care center in 2006 or earlier. At home, she does some chores where she ambulates and uses her arms and legs. Her productive work effort was erratic with only limited earnings in 2000. Although she has sought Vocational Rehabilitation, she quit because she allegedly could not sit for longer than 20 minutes. The claimant did not appear in gross mental/physical distress at the hearing, insofar as lay observation could indicate. Of note is that she stated that she could not sit for more than 20 minutes, but sat for 3/4 of an hour without difficulty that was observed from a lay perspective. At the end of the hearing, the claimant stood up and walked out of the courtroom with a normal gait. The earnings in 2005, while working for Express Services, Inc., suggest only some motivation, but also indicate a

> capacity to continue to do the work full-time. She
> was not forthcoming about this additional
> employment. Accordingly, the claimant's veracity
> is not fully established and should not preclude the
> physical or mental capacity described above, based
> on symptoms alone.

Thus, the law judge provided ample reasons for finding the plaintiff less than

fully credible. See Heppell-Libsansky v. Commissioner of Social Security,

170 Fed. Appx. 693, 699 (11th Cir. 2006)(unpub. dec.).

The plaintiff argues first that the credibility determination is not

supported by substantial evidence because the law judge said that she had not

received psychiatric treatment since 2006 when, unbeknownst to the law

judge, she had received further treatment (Tr. 22). This contention pertains

to the Suncoast mental health records which were addressed in the sentence-

six argument. When evaluating whether there is substantial evidence to

support a law judge's determination, "a reviewing court is limited to the

certified administrative record." Ingram v. Commissioner of Social Security,

supra, 496 F.3d at 1268. Since the Suncoast records are not part of the

administrative record, the plaintiff cannot premise her contention that the law

judge's credibility determination was not supported by substantial evidence

on the Suncoast records. See id. Moreover, as previously explained, there is

nothing in those records that would cause a change in the credibility determination.

Next, the plaintiff argues, unpersuasively, that the law judge's credibility determination was not supported by substantial evidence because he was in error in stating that the plaintiff has been inconsistent concerning her treatment of pain (Doc. 13, pp. 11-13). Specifically, the plaintiff argues that the law judge said incorrectly that the plaintiff (1) "reported good and significant pain relief from injections;" (2) takes only Aleve over the counter medication for pain relief; and (3) testified inconsistently that she takes baths for pain relief, but that at times she does not shower (id.).

The substantial evidence supporting the law judge's statement that the plaintiff reported "good and significant pain relief" from the injections is the plaintiff's own reports to her physicians (see, e.g., Tr. 240 ("The patient reports that she had significant relief with" thoracic facet injections and "reports about a 65% reduction in her pain"); Tr. 162 ("epidural injection ... seemed to give her some significant relief in her back pain"); Tr. 178 (she "reports that the trigger point injections helped"); Tr. 236 ("she has had about a 75% reduction in her pain" from injections); Tr. 259

("She reports she is having a 50% improvement in her back pain" since her injection.)).

The plaintiff states, without any record citations, that there were occasions when the injections did not alleviate her pain, and that the injections did not eliminate her pain (Doc. 13, pp. 11-12).[5] The law judge's comment about injections was simply a general one-sentence summary of reports from a very short part of the plaintiff's alleged seven and one-half year period of disability. The law judge's credibility determination is not rendered invalid because the law judge, in the course of an extended explanation, did not discuss the results of each injection. Rather, the law judge could fairly think, based on the plaintiff's own reports, that, generally speaking, the plaintiff received good, and significant, pain relief from injections.

Moreover, the time when the plaintiff was receiving injections was a period of just a few months following her May 2006 motor vehicle accident. That period was significantly short of twelve months, so that, even if the injections were totally ineffective – and they were not – the plaintiff

---

[5]One such injection was a sacroiliac injection which the physician opined did not work because the injection was not in the proper area (see Tr. 263).

could not establish that she was disabled for the required twelve-month qualifying period. Accordingly, the law judge's comment about injections did not play a significant role in his credibility determination.

Next, the plaintiff asserts, vaguely, that the law judge improperly considered her use of Aleve over-the-counter medication for pain relief because Dr. Susann K. Chowdhury, her pain management physician, had prescribed Vicodin for pain relief between September 2006 and February 2007 (Doc. 13, p. 12). This relatively short period, as indicated, followed the plaintiff's May 2006 motor vehicle accident. The use of prescription medication during that period does not contradict the law judge's finding that the plaintiff "takes only over-the-counter Aleve at times, which is a simple analgesic" (Tr. 22). The law judge's finding is supported by the plaintiff's testimony. Thus, when the law judge asked the plaintiff what she does to relieve her pain, she responded that she "take[s] Aleve, stuff like that" (Tr. 421). The law judge could reasonably conclude that, if the plaintiff is only taking over-the-counter medication, her pain is not totally disabling, as she claims.

The plaintiff also argues that the law judge erred when he stated that she testified inconsistently that she took baths to alleviate her pain, but that she may not shower when she is depressed (Doc. 13, p. 13). At the administrative hearing, the plaintiff testified that she experiences pain "pretty much everyday all day," and that she takes baths, or Aleve, to alleviate it (Tr. 421). The plaintiff also testified that, due to depression, sometimes she does not dress or shower, and will just stay in her pajamas (see Tr. 429). With regard to this testimony the law judge stated (Tr. 22):

> [The plaintiff] testified at the hearing that she bathes to alleviate her back pain, but later when questioned by her representative about her mental condition she said she does not shower at times. These inconsistencies taint her credibility because either her pain is not so severe as alleged, as she does not require a bath daily or more frequently, or she was trying to present the alleged pain and depression worse than they really are....

The plaintiff argues that there is no inconsistency in this testimony because "[o]ne can not take showers but still take a bath. A shower is not a bath" (Doc. 13, p. 13). This argument, while logically correct, misses the law judge's point.

The thrust of the law judge's statement is that the plaintiff seemed to embellish her answers depending upon whether she was being asked about her physical condition or her mental condition. Thus, the law judge concluded – reasonably – that to the extent that the plaintiff suggested that she bathed once or more during the day to alleviate her pain, that suggestion was inconsistent with her testimony that, due to depression, she would stay in bed and not even bathe, either by bath or shower.

Finally, the plaintiff makes the conclusory assertion that the objective evidence supports her subjective complaints of pain (id.). In this regard, the plaintiff states that she has a "small" disc herniation at T11-12 and that she has "mild to moderate" degeneration in her back and neck (id.).

However, these diagnoses, in themselves, do not compel the conclusion that the plaintiff's testimony of disabling pain is credible, or even that she has greater functional limitations than found by the law judge. See Davis v. Barnhart, 153 Fed. Appx. 569, 572 (11th Cir. 2005)(unpub. dec.) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Moreover, as previously

explained, it is not enough for the plaintiff to show that the objective medical evidence supports the plaintiff's allegations of disabling pain; the plaintiff, rather, must establish that the evidence compels a finding of disabling pain. Adefemi v. Ashcroft, supra.

In all events, the law judge considered the plaintiff's physical problems and reasonably found that they were not of a disabling severity (Tr. 20). In this regard, the law judge noted that MRIs revealed no, or minimal, stenosis, and other disabling conditions resulting from disc herniation and degeneration were absent (id.). Further, he pointed out that, overall, her clinical examinations did not evidence disabling limitations in movement (see id.)(noting, among other things, a normal gait, sufficient range of motion, and the absence of focal weakness or abnormal movements). The plaintiff does not mention, much less refute, these statements.

Further, the only physician to complete a residual functional capacity form was Dr. Ronald S. Kline, a nonexamining reviewing physician, who opined that the plaintiff's impairments would not preclude her from performing medium work (Tr. 321-28). The plaintiff, on the other hand, does not cite to any physician who opined that her impairments were disabling, or

who even suggested greater functional limitations than found by the law judge.[6]

In sum, the law judge provided adequate reasons for his credibility determination, and those reasons are supported by substantial evidence. Therefore, this court is not authorized to second guess that determination. See Celebrezze v. O'Brient, supra. Accordingly, the plaintiff's challenges to the law judge's credibility determination should be rejected.

C. The plaintiff's last contention is that the law judge failed to assess the complete opinion of Dr. Gerald J. Hodan, a consultative psychologist who evaluated the plaintiff on January 3, 2006 (Doc. 13, pp. 13-14; Tr. 330-34).[7] Dr. Hodan found that the plaintiff was alert, clear thinking, and well oriented for person, place and time (Tr. 332). He stated that she was pleasant and cooperative, that her mood did not suggest significant depression

---

[6]Dr. Clayton W. Hopkins, a chiropractor, stated in a letter that appears to have been prepared for litigation that the plaintiff was disabled for an undetermined amount of time (Tr. 150-52). The law judge cogently discounted this opinion (Tr. 19), and the plaintiff has not challenged that determination. See Falge v. Apfel. 150 F.3d 1320. 1323 (11th Cir. 1998).

[7]The principle that, absent good cause, the opinion of a treating physician is to be given considerable or substantial weight does not apply to Dr. Hodan's opinions. since he is not a treating psychologist. See Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).

or unusual anxiety, and that she did not exhibit severe impairments in attention, concentration or memory (id.). Dr. Hodan also opined that the plaintiff was capable of presenting herself for work reliably and maintaining smooth relationships in a work setting, but that, if she is depressed or manic, her mood may interfere with her work (Tr. 333).

The law judge considered Dr. Hodan's opinions, and refers to Dr. Hodan's opinions, more than once, in support of his finding that the plaintiff does not suffer from disabling mental impairments (see Tr. 18, 20-21). The plaintiff contends, however, that the law judge failed to state the weight given to Dr. Hodan's opinion regarding her "ability ... to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances and the ability to respond appropriately to supervision, coworkers and work situations" (Doc. 13, p. 14). This contention is unpersuasive.

Thus, the law judge, in finding that the plaintiff "displays little mental dysfunction," stated that the plaintiff is "quite capable of presenting herself for work reliably and maintaining good personal grooming and hygiene. She was pleasant, friendly, and cooperative in her attitude, suggesting she was capable of developing and sustaining smooth

relationships with others in a work setting" (Tr. 20-21). These statements are essentially verbatim from Dr. Hodan's psychological evaluation (compare Tr. 21 with Tr. 333). Thus, the law judge accepted these opinions of Dr. Hodan regarding the plaintiff's ability to attend work regularly and interact appropriately with others.

The plaintiff's argument, more precisely, is that the law judge did not expressly address other comments made by Dr. Hodan regarding the plaintiff's work attendance and social functioning. Thus, Dr. Hodan speculated that, "[i]f depressed, [the plaintiff] may not even appear for work. If manic, she would be very disruptive within the work setting and risk being let go....Obviously, ... should she experience a manic episode and be irritable, agitated and angry, she will have some difficulties in her relationships with others, as well in coping well with job stress" (Doc. 13, p. 14; Tr. 333).

As the Commissioner correctly asserts, these opinions are clearly speculative. The findings reported by Dr. Hodan do not show that such adverse circumstances are likely to occur to the plaintiff. After all, Dr. Hodan said that the plaintiff "seem[ed] quite capable of presenting herself for work

reliably," and appeared "capable of developing and sustaining smooth relationships with others in a work setting" (Tr. 333).

Dr. Hodan's opinions, rather, seem to be simply a comment about the types of behavior that could occur if someone had a bipolar disorder. This conclusion is supported by the fact that in a prior case Dr. Hodan had expressed very similar opinions regarding an individual with bipolar disorder. See Scharver v. Astrue, Case No. 8:08-CV-2058-T-TGW (Doc. 18, pp. 10-11). In other words, Dr. Hodan was merely opining how a person with a bipolar disorder could act, and was not indicating with any degree of medical probability that is how the plaintiff would act.

Moreover, it is clear that Dr. Hodan's speculation as to how the plaintiff may react at work if she should become depressed, or manic, was implicitly rejected by the law judge to the extent that it is inconsistent with his determination of the plaintiff's mental functional capacity. Cf. Dyer v. Barnhart, supra, 395 F.3d at 1211 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision..."). In order to accommodate the plaintiff's bipolar and panic disorders, the law judge limited the plaintiff to jobs involving simple, routine, repetitive instructions, and no

frequent interaction with the general public (Tr. 19). These limitations are consistent with the opinion of Dr. Nancy Dinwoodie, a nonexamining reviewing physician, who opined that the plaintiff's bipolar disorder causes moderate limitations in sustained concentration, persistence, or pace (Tr. 18, 21, 313-19). Under these circumstances, the law judge did not err by failing to include in his residual functional capacity determination additional mental limitations based upon Dr. Hodan's opinion regarding the possible problems of a person with bipolar disorder.

## IV.

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
DATED: APRIL ≃ , 2010        UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).